```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


STEHEN L. BOLAR,                  :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :
                                  :    CIVIL ACTION 15-0010-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was heard on August 24, 2015. After considering the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-three years old, had completed a high school education (Tr. 57), and had previous work experience as a chipper/grinder, tank tester, sandblaster, and shipfitter (Tr. 70). Plaintiff alleges disability due to Post-Traumatic Stress Disorder, degenerative joint disease in the hip and ankle, poly-substance abuse, and sleep apnea (Doc. 13 Fact Sheet).

The Plaintiff applied for disability benefits on December 27, 2011, alleging his disability began on October 18, 2008 (Tr. 20, 147-50). An Administrative Law Judge (ALJ) denied benefits, determining that Bolar was capable of performing specific light work jobs (Tr. 20-29). Plaintiff requested review of the hearing decision (Tr. 15-16), but the Appeals Council denied it (Tr. 1-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Bolar alleges that the ALJ failed to properly consider (1) the opinions and

2

conclusions of his treating physician and (2) the Veteran Administration's finding that he was disabled (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 16). The relevant evidence of record follows.[1]

In discussing Bolar's severe impairments, the ALJ found as follows:

> In 2009 and 2010, the claimant was treated at USA Department of Orthopaedics for chronic foot pain, and talus spurring with arthritic changes/exostosis evidenced by computed tomography scans/x-rays. In March of 2010, the claimant underwent right foot partial excisions with calcaneus tarsal tunnel release. Medications were prescribed for the claimant (Exhibit 1F). From 2008 to 2012, the claimant received treatment from Veterans Administration Gulf Coast Health Care System/Mobile Veterans Administration for ankle/foot/pelvic arthritis with joint pain, cocaine abuse in remission, episodic alcohol abuse, pelvic region discomfort, a depressive disorder, a post-traumatic stress disorder (PTSD), sleep disturbance, and an explosive personality disorder (Exhibits 2F, 6F, 8F and 10F).

(Tr. 22).

On December 16, 2010, the Department of Veterans Affairs (hereinafter *DVA*) determined that Plaintiff's disability, because of PTSD, would be increased to seventy percent—up from

---

[1] The Court notes that the transcript in this action numbers 960 pages (*see* Doc. 12). As such, the Court will focus on the evidence to which the Parties point and will not summarize the balance of it. However, the Court will record the ALJ's medical evidence summary regarding Bolar's severe impairments, albeit brief.

3

fifty percent—effective September 2, 2010 (Tr. 226; *see generally* Tr. 226-38).

On April 4, 2011, Julie D. Teater, Doctor of Psychology with the Biloxi VA Medical Center, completed a disability questionnaire indicating that Bolar had PTSD and also had suffered from cannabis, cocaine, and alcohol abuse, all in remission (Tr. 339-42).  Plaintiff had experienced a traumatic event in that he "witnessed or was confronted with an event that involved actual or threatened death or serious injury" involving intense fear, helplessness, or horror (Tr. 342); the traumatic event, however, was not persistently re-experienced (Tr. 343). Teater indicated that Bolar persistently avoided thoughts, feelings or conversations associated with the trauma, avoided activities, places or people that aroused recollections of it, and experienced markedly diminished interest or participation in significant activities.  The Doctor went on to find that, since the trauma, Plaintiff had experienced difficulty falling or staying asleep, irritability or outbursts of anger, difficulty concentrating, and exaggerated startle response.  These problems had lasted for more than one month but did not cause clinically significant distress or impairment in social, occupational or other important areas of functioning (Tr. 343-44).  Teater indicated that Bolar suffered from depressed mood, anxiety, and mood and motivation disturbances.  The Doctor indicated that

4

Plaintiff experienced occupational and social impairment due to mild or transient symptoms that decreased work efficiency and his ability to perform occupational tasks, but only during periods of significant stress (Tr. 346). Though Dr. Teater thought Bolar was capable of handling his own financial affairs, Plaintiff insisted that he could not. It was Dr. Teater's opinion that his PTSD and other disorders would not impact his ability to work (Tr. 347).

On July 18, 2011, a letter from the DVA found that although Bolar had "occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress," his PTSD did not impact his ability to perform light or sedentary work (Tr. 222; *see generally* Tr. 221-23). It was determined however, that he was not competent to manage his financial affairs (*id.*). Plaintiff's GAF was rated at 61.[2]

On November 2, 2011, Dr. Rickey L. Jones, M.Ed. and Vocational Rehabilitation Counselor with the DVA, wrote the following letter regarding Bolar:

> The veteran was determined to be
> infeasible for training leading to gainful

---

[2] A GAF score between 61 and 70 indicates "[s]ome symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

5

> employment under the Vocational
> Rehabilitation and Employment Program,
> Chapter 31.  The severity of the veteran's
> service connected disabilities significantly
> impairs his ability to function in a
> training or occupational setting.  He has a
> combined disability rating of 70% for the
> following SC conditions:  Post Traumatic
> Stress Disorder 70% and Tinnitus 10%.  None
> Service Connected Disabilities include:
> Limitation of Extension, knee, Hypertensive
> Vascular Disease, Hearing loss, and
> Limitation of Motion, Ankle.
> 	No Independent Living Needs were
> identified.

(Tr. 458).  On that same date, Jones penned a letter indicating that Bolar was not able to receive vocational rehabilitation and employment services because it was "not reasonable to expect [him] to be able to train for or get a suitable job at [that] time" (Tr. 216).  More specifically, the letter indicated the VA's belief that Plaintiff could not "[s]ucceed in a program of training or education and [g]et a job in an occupation that matches [his] skills, talents, and interests" (Tr. 216).

On February 16, 2012, Dr. Henrietta T. Kovacs, General Practitioner and Internist, examined Plaintiff at the request of the Social Security Administration; by way of history, she reported that he "was serving in 1991 at the Desert Storm/Desert Shield in artillery.  He stayed in the Army for one year and nine months between 1990 and 1991.  He developed post traumatic stress disorder after returning from Oklahoma" (Tr. 461; *see*

*generally* Tr. 461-67, 684-87).  Kovacs's physical exam revealed mild range of motion (hereinafter *ROM*) limitations in the cervical spine, right hip, and right ankle; Plaintiff had no ROM limitations in his dorsolumbar spine, shoulders, elbows, forearms, wrists, hands, or fingers.  He could heel and toe walk with normal gait.  Bolar could not do a full squat because of his ankle; straight leg-raising was negative at eighty degrees bilaterally.  Her impression follows:  (1) Post traumatic stress disorder per attached medical records; (2) chronic right hip pain with mild ROM limitation; (3) chronic right ankle pain with ROM limitation; (4) chronic intermittent right sided low back pain; (5) history of dyspnea on exertion; (6) history of hypercholesterolemia; (7) tobacco abuse; and (8) recovering alcoholic and drug addict.

On November 26, 2012, Dr. D.M.G. Ewing took forty-five minutes to examine Bolar, a psychiatric outpatient taking Amitriptyline (an antidepressant) and Seroquel (Tr. 691-95).  His past medical history included the following:  low back pain; ankle/foot pain; cocaine abuse, cannabis dependence, and alcohol dependence, all in remission; hip and ankle arthralgia; traumatic arthropathy; aggression, and PTSD.  Bolar's service-connected disability was seventy percent due to PTSD and Tinnitus.  Plaintiff and his wife appeared without an appointment, saying that he had disability forms he needed

7

completed.  Bolar reported that he had been taking his medications and they kept him calmer and helped him sleep ten-to-twelve hours most nights; he denied sedation, hangover, or other side effects from the drugs.  Plaintiff's wife confirmed his "mostly pleasant state of mind," with no significant irritability, melancholy, and anxiety (Tr. 692).  He denied hopelessness, persistent morbid thoughts, and alcohol or illicit drug use; he reported his mood as "Good...Great..." (Tr. 693).  An alcohol-screening test was negative (Tr. 695).  Ewing noted that he was oriented in four spheres, seemed to be of average intelligence, and had logical thoughts with no evidence of thought disorder or delusion; he was goal-directed, centered on the disability form.  Ewing's impression was that Bolar "[did] not appear to be disabled from work based on history and mental status exam—Vet reports robust SX reduction on current regimen" (Tr. 693).  The Doctor estimated his GAF to be 50-55.[3]  Plaintiff was to see Ewing again in six months.  That same date, Dr. Ewing completed a Mental Residual Functional Capacity (hereinafter *RFC*) Questionnaire indicating that Bolar had moderate restrictions of activities of daily living and marked difficulty

---

[3]**Error! Main Document Only.**"A GAF score between 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

in maintaining social functioning; no assessment was made as to Plaintiff's concentration, persistence or pace (Tr. 699-700). Bolar was expected to have three episodes of decompensation in work or work-like settings that would cause him to withdraw from the situation or experience exacerbation of signs and symptoms for a period of at least two weeks.  Ewing went on to say that Plaintiff was moderately limited in his ability to do the following:  understand, carry out, and remember instructions; respond appropriately to supervision and co-workers; and perform simple, repetitive tasks.  Bolar was markedly limited in responding appropriately to customary work pressure.  The Doctor stated that Plaintiff had had these limitations for at least one year and that he frequently attended therapy; Plaintiff's medications caused drowsiness, light-headedness, and blurred vision.  The form urged the reviewer to do the following:  "For any ratings of moderate or greater, please explain basis of limitation in sub-part 17 (COMMENTS);" Ewing did not avail himself of this opportunity (Tr. 699).

    On November 27, 2012, VA records show that Bolar attended a therapy session with a Social Worker[4] for PTSD and aggression; he was oriented in four spheres, his thought processes were logical and goal-directed, and his mood was pleasant and animated (Tr.

---

[4]This Social Worker also signed off on Dr. Ewing's Mental RFC Questionnaire just discussed (*see* Tr. 68; *cf.* Tr. 700).

9

688-90).  Insight and judgment were good; he was able to make healthcare and financial decisions independently.  Strengths were listed:  "Individual strengths, place to live, Educated, Family/Peer Support, Good judgment coping skills, psychosocial support, positive coping skills, future oriented, problem solving ability, motivated/seeking help, positive social support" (Tr. 689).  Weaknesses were listed:  "Psychosocial stressors, income not adequate, medical problems, chronic substance abuse, recent loss, anger/depression, risky behavior, lack social support, expressed hopelessness, recent history of divorce, recent drug/alcohol binge, unemployment, estranged from family" (Tr. 689).  The Social Worker indicated Plaintiff had low risk for suicide or homicide; he had continuing same family issues but was "sporadic, at best, with obtaining treatment" (Tr. 690).  This concludes all of the relevant medical evidence.[5]

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of his physician, Dr. Ewing (Doc. 13, pp. 2-5).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the

---

[5] The Court notes that the records submitted to the Appeals Council following the entry of the ALJ's decision will not be discussed herein as no claim has been made regarding that evidence (*see* Tr. 701-956; *cf.* Doc. 13).

10

opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[6] *see also* 20 C.F.R. § 404.1527 (2014).

The ALJ reported Dr. Ewing's November 2012 findings as well as his conclusions in the mental RFC questionnaire he completed but found them internally inconsistent (Tr. 27). The evidence shows that the Doctor's examination notes stated Plaintiff characterized himself as doing "Good . . . Great" (Tr. 693); his wife even confirmed his "mostly pleasant state of mind," with no significant irritability, melancholy, and anxiety (Tr. 692). After a forty-five minute examination, Ewing found that Bolar "[did] not appear to be disabled from work based on history and mental status exam—Vet reports robust SX reduction on current regimen" (Tr. 693). Ewing indicated he did not need to see Plaintiff again for six months. Yet, that same date, the Doctor completed a Mental RFC Questionnaire indicating that Bolar had moderate restrictions of activities of daily living and marked difficulty in maintaining social functioning; in addition, Plaintiff was markedly limited in responding appropriately to customary work pressure (Tr. 699-700). Though encouraged to explain these limitations, Ewing did not do so (Tr. 699).

The Court finds that Ewing's notes are plainly inconsistent

---

[6]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11

with the conclusions listed in the RFC form. The conclusions are also inconsistent with Ewing's report of Bolar's description of how he was doing,[7] the report of Dr. Kovacs (Tr. 461-67), the report of Psychologist Teater (Tr. 339-47), and other medical evidence cited by the ALJ but not restated here (Tr. 26). The Court specifically notes that the ROM chart completed by Kovacs does not demonstrate an inability to work (Tr. 466-47) while Teater specifically found that Plaintiff's impairments would not prevent him from working (Tr. 347).[8]

As further support for Plaintiff's argument that Dr. Ewing's conclusions were improperly dismissed, Bolar points out that the Doctor repeatedly assigned GAF scores of 50 (Doc. 13, p. 4) (*citing* Tr. 610, 620, 693).[9] Plaintiff further questions the ALJ's characterization of his alcohol dependence, asserting her speculation as to the extent of the effects (Doc. 13, p. 4).

The ALJ's findings were as follows:

> Moreover, medical records indicated the claimant was abusing alcohol episodically (e.g., see page 62 of Exhibit 2F and pages 17-18 of Exhibit 6F), which likely exacerbated the claimant's mental issues for

---

[7] The Court notes Plaintiff has not challenged the ALJ's finding that his own testimony was not credible (*see* Tr. 25).

[8] The Court notes that although Plaintiff points out Teater's finding that Bolar could not handle his own financial affairs (Doc. 13, p. 3), a more careful reading of the report shows that she thought he was capable of handling his finances, but deferred to his insistence that he could not (Tr. 346).

[9] The Court is aware of an earlier cite by Bolar showing eleven more GAF scores ranging from thirty-five to fifty (Doc. 13, p. 3).

12

> a portion of the time he was receiving treatment. Of note, medical records reflected the claimant had global assessment functioning (GAF) scores of 35-50, indicating major to serious impairments. However, the undersigned gives little weight to these GAF scores, since they could have been affected by the claimant's alcohol abuse. Notably, in August of 2012, it was noted the claimant was stable on his medical regimen (see page 21 of Exhibit 8F), which established that the claimant's mental condition improved with treatment (Exhibits 2F, 6F, 8F and 10F).

(Tr. 26). The Court notes VA records show, as alluded to by the ALJ, that, on October 31, 2008, Plaintiff was positive for ethanol, cocaine, and cannabinoids and the attending physician stated that "Pt has a clear substance abuse problem. There may also be an underlying PTSD problem. However, one would only be able to make that Dx after some time of abstinence" (Tr. 484). In her evaluation of April 4, 2011, Teater noted that Bolar "has long history of substance abuse, unclear if it related to his current symptoms" (Tr. 345). These records provide support for the ALJ's findings notwithstanding Plaintiff's assertions otherwise. Plaintiff's claim that the ALJ did not properly consider the conclusions of his treating physician are without merit.

Plaintiff also claims that the ALJ failed to properly consider the VA's finding that he was disabled (Doc. 13, pp. 5-7). While acknowledging that the ALJ was not bound by the VA's

13

findings, Bolar asserts that the ALJ "failed to consider the VA rating decision altogether" (Doc. 13, p. 6).  Plaintiff's argument focuses on the VA report as well as the conclusions of Rehabilitation Counselor Jones.

Social Security regulations state as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (2014).  The Eleventh Circuit Court of Appeals has acknowledged this principle, though finding that another's agency's findings of disability are entitled to great weight.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (1983).

The ALJ, in her determination, summarized the disability finding made known by Jones and found the following:

> However, Dr. Jones did not determine the claimant was totally unable to work any type of job.  In addition, Dr. Jones noted the claimant had no independent living needs, which indicated the claimant was able to function on some level.  Hence, the undersigned assigns little weight to Dr. Jones' opinions, since they seemed inconsistent with medical records from the Veterans Administration, which evidenced the

14

>       claimant was able to mentally and physically
>       function at a high level.

(Doc. 27).

The record shows that the VA, on December 16, 2010, issued a decision that Plaintiff was seventy percent disabled (Tr. 226-38). That report had no author, but referenced Counselor Jones as the contact person for any questions regarding it (Tr. 229). The record further shows that, in a letter dated November 2, 2011, Jones indicated that Bolar did not qualify for vocational rehabilitation and employment services because he would not successfully complete the education or get a job matching his skills (Tr. 216).

The ALJ's determination clearly discounts the conclusions in Jones's letter. The Court further finds that the ALJ's conclusion applies equally to the VA's finding of seventy percent disability as she specifically references that finding in her discussion.[10] The ALJ rejected those conclusions as "inconsistent with medical records from the [VA]" (Tr. 27). The Court finds substantial support for the ALJ's conclusion.

Plaintiff has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a

---

[10] The Court further notes that the ALJ rejected Jones's *opinions*—not opinion—lending more credence to this finding.

15

reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 27th day of August, 2015.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE